*NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| WILLIAM RIZK, | : | Civ. No. 22-5692 (RMB) |
| Plaintiff | : | |
| v. | : | **OPINION** |
| ALEJANDOR MAYORKAS, et al., | : | |
| Defendants | : | |

BUMB, Chief United States District Judge

This matter comes before the Court upon *pro se* Plaintiff Wisam Rizk's complaint (Dkt. No. 1) and motion for *nunc pro tunc* review of citizenship denial ("Mot. for *Nunc Pro Tunc* Review" Dkt. No. 2); Defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and Opposition Brief ("Mot. to Dismiss" Dkt. No. 31); Plaintiff's Response (Pl's Response, Dkt. No. 36), and Defendants' Reply Brief ("Defs' Reply Brief" Dkt. No. 42.)  For the reasons discussed below, the Court will grant Defendants' motion to dismiss.

I.   THE PARTIES' ARGUMENTS

   A.   Plaintiff's Complaint and Motion for *Nunc Pro Tunc* Review of Citizenship Denial

      1.   Factual Allegations

Plaintiff alleges that he obtained permanent residency status in the United States on July 18, 2005.  (Mot. for *Nunc Pro Tunc* Review, Dkt. No. 2 at 7. ¶ 3.)  On

December 13, 2010, he filed his N-400 naturalization application and passed his examination. (*Id.* ¶ 4.) He completed the examination on or about January 2011. (*Id.* ¶ 5.) On April 14, 2015, Plaintiff went to the Department of Homeland Security Office in Cleveland, Ohio to ask why his naturalization application was delayed, and he was directed to the FBI. (*Id.* ¶ 6.) On April 15, 2015, Plaintiff went to the Akron/Canton FBI Office to get his naturalization application cleared. (*Id.* ¶ 8.) Two FBI agents asked him to become an informant in exchange for citizenship. (*Id.* ¶ 9.) Plaintiff agreed to become an informant in the United States but not in the Middle East. (*Id.* ¶ 10.)

Plaintiff attended an N-336 hearing with United States Citizenship and Immigration Services ("USCIS") on July 8, 2015. (*Id.* ¶ 9.) On December 19, 2018, USCIS denied Plaintiff citizenship for lack of moral character based on his guilty plea to fraud crimes. (*Id.* ¶ 10.) In June 2021, Plaintiff requested that Immigration and Customs Enforcement ("ICE") review his file and consider his claims that the FBI illegally delayed his citizenship in violation of his due process rights. (*Id.* ¶ 11.) Plaintiff received a negative response to his inquiry on September 8, 2021. (Ex. 3, Dkt. No. 1-2 at 5.)[1] On September 10, 2021, Plaintiff filed a motion to vacate, set aside or correct his sentence in Criminal Case No. 17-cr-424-CAB (N.D. Ohio), raising

---

[1] Exhibit 3 is an email Plaintiff received from prison staff, Ms. Garcia. Ms. Garcia informed Plaintiff that she had received an email from ICE in response to Plaintiff's complaint. ICE advised that Plaintiff was subject to a valid removal order and it was their intent to execute the removal order in 2024. Plaintiff's FOIA request was honored. ICE advised Plaintiff that if he had proof of a conspiracy between the FBI and USCIS to nefariously deprive him of citizenship, he should file a court action.

claims of actual innocence and ineffective assistance of counsel. (*Id.* ¶ 12.)

### 2. Legal Claims

Plaintiff first asserts jurisdiction under 8 U.S.C. § 1421(c) and § 1447(b). (Mot. for *Nunc Pro Tunc* Review, Dkt. No. 2 at 4-5.) He further submits that a person who has a nonfrivolous claim to U.S. citizenship has a due process right not to be deported without a judicial trial on citizenship. Plaintiff alleges the FBI and USCIS violated his due process rights by: (1) delaying his naturalization application for more than seven years; (2) failing to adjudicate his N-400 application within 120 days of his naturalization examination, and (3) colluding to deprive Plaintiff of the oath ceremony, although he met all eligibility requirements for citizenship. (*Id.* at 6-7.)

Plaintiff also alleges "USCIS Violated the Administrative Rule of Law." (Mot., Dkt. No. 2 at 7.) He points to 8 C.F.R. § 335.1, which provides:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application. The district director may waive the neighborhood investigation of the applicant provided for in this paragraph.

Plaintiff argues that it is only after completion of the investigation that an applicant is invited for an examination pursuant to 8 C.F.R. § 335.2(b), which provides, in relevant part:

> Completion of criminal background checks before

3

> examination. USCIS will notify applicants for naturalization to appear before a USCIS officer for initial examination on the naturalization application only after the USCIS has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:
>
>> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;
>>
>> (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
>>
>> (3) Confirmation from the Federal Bureau of Investigation that the fingerprint data submitted for the criminal background check has been rejected.

The examination consists of questioning under oath, a written test on basic literacy in the English language and history and government of the United States, presentation of oral and documentary evidence, and witness testimony, if necessary. 8 C.F.R. § 335.2(c)-d). An accurate record of the examination must be made. 8 U.S.C. § 335.2(e).

Review of the citizenship application is governed, in part, by 8 C.F.R. § 335.3(a), which provides:

> (a) USCIS shall grant the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made at the time of the initial examination or within 120–days after the date of the initial examination of the applicant for naturalization under § 335.2. The applicant shall be notified that the application has been granted or denied and,

>if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

Under 8 U.S.C. § 1446, if there is no statutory basis to deny the application, USCIS "shall approve" a naturalization application in the 120-day period. Plaintiff's legal theory is that when he underwent a naturalization examination in January 2011, this triggered the 120-day period in which USCIS must issue a decision to grant or deny his application. The background check, by statute, was required to be completed before his examination. Therefore, USCIS unlawfully imposed an FBI background check after the examination as a condition of citizenship. Plaintiff contends he had a due process right to approval of his naturalization application by March 12, 2011, with an oath ceremony scheduled shortly thereafter. (Mot. for *Nunc Pro Tunc Review*, Dkt. No. 2 at 14). Plaintiff also relies on 5 U.S.C. § 555(b) for his claim that USCIS must grant naturalization applications within a reasonable time and must have a valid reason. (*Id.*)

Plaintiff alleges the FBI was negligent in completing his background check in a reasonable time. He points to calls made by USCIS to the FBI to determine the status of his Plaintiff's background check and receiving responses such as "case is not a priority" and in December 2013, "still open." (*Id.* at 11.) Plaintiff alleges "the USCIS agent continued to call into the FBI/SA, and the FBI/SA continued to ignore the calls and delay, for the simple sake of delaying." (*Id.*)

Plaintiff contends that when he went to the FBI Office in Ohio in April 2015,

5

to determine why his background check had not been completed, two agents improperly pressured him to become an informant in exchange for clearing up his citizenship application. Plaintiff agreed to become a domestic informant but not an informant in the Middle East. (Mot. for *Nunc Pro Tunc* Review, Dkt. No. 2 at 14-15.) Plaintiff also challenges the constitutionality of CARRP, which he describes as a secretive second track FBI background investigation "designed to insure that immigrants who pose a security risk do not gain immigrant status." (*Id.* at 17.) Plaintiff alleges "CARRP was seemingly utilized and imposed on the applicant, illegally forcing him into a predestined route to denial without being a security risk, even though the application should have been approved." (*Id.* at 18.)

Concerning his commission of fraud crimes, Plaintiff contends the statutory period to establish good moral character for naturalization eligibility is five-years preceding the date of application; and his naturalization application was submitted December 13, 2010. Therefore, it was impermissible for USCIS to deny his application based on crimes committed subsequent to December 13, 2010. (*Id.* at 20.) Finally, Plaintiff contends that *nunc pro tunc* relief is an appropriate remedy for the constitutional violations by USCIS and FBI. (*Id.* at 25-28.)

    **B.**    **Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) and Opposition to Plaintiff's Motion for *Nunc Pro Tunc* Review of Citizenship Denial**

Defendants contend that Plaintiff is permanently and statutorily ineligible to naturalize under the Immigration and Nationality Act due to his aggravated felony

convictions and final order of removal. Therefore, he cannot state a claim for relief under § 1421(c). (Mot. to Dismiss, Dkt. No. 31-1 at 14-21.) Defendants further contend that this Court lacks jurisdiction: (1) under 8 U.S.C. § 1447(b); (2) over Plaintiff's due process claims; (3) to protect Plaintiff from deportation; (4) under the Administrative Procedure Act; and (5) for mandamus relief.[2] (*Id.* at 22-25.) Finally, Defendants argue that FBI is not a proper party under 8 U.S.C. § 1421(c).

### C. Plaintiff's Response to Defendants' Motion to Dismiss

In response, Plaintiff submits that *nunc pro tunc* relief will remove any jurisdictional barriers and is required to uphold the immigration laws and protect his constitutional rights. (Pl's Response, Dkt. No. 36 at 1, 2.) He intends to file an actual innocence claim to vacate his fraud convictions, and he argues that this Court can issue a declaratory judgment[3] to assist him in dismissing his order of removal and fight his immigration case. (*Id.* at 2.) Additionally, Plaintiff argues that it is immaterial under 8 U.S.C. § 1447(b) that his immigration case has concluded; this

---

[2] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

[3] 28 U.S.C. § 2201 provides, in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Court must still address the violations of law by the USCIS and the FBI. (*Id.* at 4-5.) Plaintiff has also filed a habeas petition under 28 U.S.C. § 2241 to challenge the final order of removal against him. (*Id.* at 6-7.) Finally, Plaintiff claims the FBI is a proper party because FBI caused the delay in processing his naturalization application. (*Id.* at 8-9.) Plaintiff requests a jury trial, and ultimately seeks the following relief: (1) assume jurisdiction; (2) conduct a de novo hearing on his naturalization application; (3) order the Attorney General to grant his naturalization application *nunc pro tunc* as of 2011 or grant a jury trial on the merits; (4) administer the oath of allegiance or order Respondent to do so *nunc pro tunc*; and (5) grant any further relief available.

        **D.**    **Defendants' Reply Brief**

In further support of their motion to dismiss, Defendants maintain that Supreme Court and Third Circuit law prevent equitable relief on Plaintiff's constitutional claims. (Defs' Reply Brief, Dkt. No. 42 at 6.) Third Circuit law precludes declaratory relief from Plaintiff's order of removal. (*Id.* at 6-7.) Finally, because § 1421(c) provides adequate relief, the Court lacks jurisdiction under the APA and for mandamus relief. (*Id.* at 7.)

The parties do not dispute jurisdiction under 8 U.S.C. § 1421(c). Therefore, the Court begins with Plaintiff's request for de novo review of denial of his citizenship application.

**II.**    **Review of under 8 U.S.C. § 1421(c)**

Defendants seek dismissal of Plaintiff's complaint under 8 U.S.C. § 1421(c) for failure to state a claim of naturalization eligibility. Therefore, in determining Defendants' Rule 12(b)(6) motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and may consider "document[s] that [are] 'integral to or explicitly relied upon' in the complaint." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997)).

A.  **Citizenship Eligibility Requirements**

To be eligible for naturalization in the United States, Congress requires that the applicant:

> (i) maintain five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence from the date of application until admission to citizenship; (ii) submit an application; (iii) pass a background check; (iv) pass a test on United States history and government and establish his proficiency in communicating in English; (v) be examined under oath by an immigration official; and (vi) publicly swear allegiance to the United States and renounce allegiance to other sovereigns before the Attorney General or a competent court.

*Duran-Pichardo v. Att'y Gen. of U.S.*, 695 F.3d 282, 285 (3d Cir. 2012) (citing 8 U.S.C. §§ 1423(a); 1427(a); 1445(a); 1446(a), (b); 1448(a))). Additionally, with exceptions not relevant here, [n]o person … shall be naturalized unless such applicant … (3) during all the periods referred to in this subsection has been and still is a person of good moral character…." § 1427(a). In determining good moral character, "the

9

Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e).

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was-- …

> (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;
>
> (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43))[.]

8 U.S.C. § 1101(f)(7, 8).  An aggravated felony under § 1101(a)(43)(M) is "an offense that--(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[.]"

**B.    Analysis**

Pertinent here, Plaintiff alleges that USCIS denied his N-400 application on December 19, 2018, because he failed to establish good moral character based on his crimes.  (Mot. for *Nunc Pro Tunc Review*, Dkt. No. 2 at 7, ¶ 10.)  Plaintiff does not dispute that he was convicted of aggravated felonies, but he states that he has filed a motion to vacate his criminal convictions, and he is also challenging his Judicial Order

of Removal. (*Id.* ¶ 12.)[4]  The Court takes judicial notice of the following entries on the docket of Plaintiff's criminal case:  (1) Plaintiff's § 2255 motion was denied; (2) the Sixth Circuit denied Plaintiff a certificate of appealability; and (3) the Supreme Court denied Plaintiff's petition for certiorari.  *United States v. Wisam R. Rizk*, Case No. 1:17-CR-424, (N.D. Ohio) Dkt. Nos. 57, 99, 100, 104, 107.)  Plaintiff's criminal conviction stands.  Therefore, Plaintiff has failed to state a claim that he is eligible for naturalization.  *See Gonzalez-Lora v. U.S. Dep't of Just.*, 629 F. App'x 182, 184 (3d Cir. Oct. 30, 2015) (per curiam) ("the individual must show that he has maintained good moral character until being admitted to citizenship" (citing 8 U.S.C. § 1427(a)(3)).

Plaintiff contends that he is, nonetheless, entitled to *nunc pro tunc* review of his naturalization application in 2011, because USCIS unreasonably and unlawfully

---

[4] Plaintiff asserts that his Judicial Order of Removal is not final.  This, however, is incorrect.  "As part of his plea agreement, Rizk agreed not to contest removal proceedings and consented to his removal to Austria.  *United States v. Rizk*, No. 20-4096, 2021 WL 9476990, at *1 (6th Cir. Feb. 24, 2021) (citing See 8 U.S.C. § 1228(c)(5)).  8 U.S.C. § 1228(c)(3)(A)(iii) provides:

> [u]pon execution by the defendant of a valid waiver of the right to appeal the conviction on which the order of removal is based, the expiration of the period described in section 1252(b)(1) of this title, or the final dismissal of an appeal from such conviction, the order of removal shall become final and shall be executed at the end of the prison term in accordance with the terms of the order. If the conviction is reversed on direct appeal, the order entered pursuant to this section shall be void.

"Rizk filed a timely notice of appeal from the district court's judgment, but he voluntarily dismissed his appeal on November 27, 2019."  *Rizk v. United States*, No. 22-3834, 2023 WL 5275505, at *1 (6th Cir. Feb. 27, 2023), *cert. denied*, 144 S. Ct. 184, 217 L. Ed. 2d 74 (2023).

delayed determination of his application beyond the 120-day period.[5]  Plaintiff's case is similar to that in *Duran-Pichardo v. Attorney General*, 695 F.3d 282, 288 (3d Cir. 2012). Duran-Pichardo appealed the Board of Immigration Appeals' order finding him removable from the United States. *Id.* at 284.  Like Plaintiff here, *Duran-Pichardo* argued that:

> absent the Government's own error, he would have taken the Oath and become a naturalized citizen before his convictions and thus would no longer be removable. He therefore claims that he: (i) obtained a protected liberty interest in the grant of his naturalization application; (ii) is entitled to an order granting his naturalization application; and/or (iii) is entitled to a *nunc pro tunc review* of his naturalization application so that it may be finalized (and presumably granted) without consideration of convictions that occurred after he completed the naturalization process.

*Duran-Pichardo v. Att'y Gen. of U.S.*, 695 F.3d 282, 284 (3d Cir. 2012).  It was undisputed that Duran-Pichardo had done everything that was required for naturalization, before his aggravated felony convictions, except to take the oath.  *Id.* at 285.  The Third Circuit held that Duran-Pichardo "could not have obtained any

---

[5] Plaintiff raises the specter that "a secretive second track background investigation" was applied in his case, which he identifies as the CARRP policy.  USCIS has acknowledged a CARRP [Controlled Application Review and Resolution Program] policy.  *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n. 6 (D.D.C. 2022) (collecting cases).  Plaintiff, however, alleges insufficient facts to support his conclusion that he was investigated under this policy on suspicion that he posed a security threat.  Therefore, Plaintiff fails to state a claim based on CARRP.  *See Al-Saadoon v. Barr*, 973 F.3d 794, 804 (8th Cir. 2020) (holding plaintiffs "failed to allege sufficient facts to establish that CARRP caused the denial of their applications.")  Moreover, Plaintiff's naturalization application was denied because he committed aggravated felonies, not because he posed a security threat.  Even assuming Plaintiff could allege sufficient facts to establish standing to challenge CARRP based on delay in processing his application, a finding in his favor would not entitle Plaintiff to a *nunc pro tunc* grant of his naturalization application, for the reasons discussed above.

recognizable interest in the grant of his naturalization application without taking that Oath [which is mandated by Congress]." *Id.* at 286 (alteration added). Thus, the Third Circuit held:

> [t]he statutory language is clear and unambiguous. Duran–Pichardo was still subject to removal even though he completed all of the other prerequisites to citizenship…. The facts, however, remain that the Government failed to act on Duran–Pichardo's application within 120 days of his naturalization examination, and Duran–Pichardo failed to apply to the District Court for a hearing on the matter. Having failed to invoke the very statutory and regulatory scheme that Congress enacted to address this type of delay, Duran–Pichardo can not now assert that he was deprived of due process of law.
>
> Now, Duran–Pichardo has no remedy because he has committed an aggravated felony and removal proceedings have been initiated against him. *See* 8 U.S.C. § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act….").

*Id.* at 287 (citations omitted).

Yet, Duran-Pichardo asserted that he was entitled to *nunc pro tunc* review of his naturalization application, and he sought an order from the Third Circuit directing "the agency to review his application as if he was not an aggravated felon and, thus, still eligible for citizenship." *Id.* at 288. The Third Circuit held:

> we clearly lack the authority to provide *nunc pro tunc* relief here. Equitable relief is unavailable if it would require

13

> agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding. See 8 U.S.C. § 1429; *see also, Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 209 (3d Cir. 2011) ("[A] court may not award equitable relief in contravention of the expressed intent of Congress.") (internal citations omitted); *Ajlani v. Chertoff*, 545 F.3d 229, 240–41 (2d Cir.2008) ("[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending....").

*Id.*; *accord Gonzalez-Lora v. U.S. Dep't of Just.,* 629 F. App'x 182, 184 (3d Cir. Oct. 30, 2015) (per curiam). Therefore, n*unc pro tunc* review is unavailable under 8 U.S.C. § 1421(c) because Plaintiff is subject to a final order of removal. *See also Baptiste v. Att'y Gen. United States*, 806 F. App'x 83, 86 (3d Cir. 2020) (citing *Duran-Pichardo*, 695 F.3d at 288)). *Duran-Pichardo* is binding Third Circuit precedent. Plaintiff's reliance on cases outside the Third Circuit is misplaced.

### III.   JURISDICTION OVER REMAINING CLAIMS IN COMPLAINT

Defendants move to dismiss the remainder of Plaintiff's claims, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. In a motion to dismiss for lack of jurisdiction, a party may bring a facial or factual attack on the court's subject matter jurisdiction. *Schuchardt v. President of the United States*, 839 F.3d 336, 343 (3d Cir. 2016) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "the defendant contests the pleaded jurisdictional facts, [and] 'the court must permit the plaintiff to respond with evidence supporting jurisdiction.'" *Id.* (citing *Gould* at 177 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711–12 (3d Cir. 1982)). In a factual attack, the court may weigh

14

the evidence presented by the parties and determine jurisdiction, unless there is a disputed material fact, in which case a court must conduct a plenary trial on the contested facts. *Id.* Defendants assert a factual attack on jurisdiction and rely on the Declarations of John Certo and Yu, and the attached exhibits. (Dkt. Nos. 32 and 33.) Plaintiff filed a response in opposition to Defendants' motion to dismiss. (Dkt. No. 36.) For the reasons discussed below, this Court lacks subject matter jurisdiction on the remainder of Plaintiff's claims.

### A. Jurisdiction under 8 U.S.C. § 1447

Plaintiff asserts jurisdiction under 8 U.S.C. § 1447(b), which provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Thus, a district court has jurisdiction under 8 U.S.C. § 1447(b) "over an application for naturalization if the USCIS fails to make a determination on the application within a certain time period." *Assem Abulkhair v. Bush*, 413 F. App'x 502, 505 (3d Cir. 2011) (citing 8 U.S.C. § 1447(b)). If, however, the USCIS denied a naturalization application before the filing of a complaint under § 1447(b) in federal district court, "a live controversy concerning the determination of the application— the subject matter of Section 1447—d[oes] not exist and the claim [i]s moot." *Abulkhair*, 413 F. App'x

at 505, n.1 (citing *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) ("explaining the live controversy requirement")). Plaintiff did not file a complaint under § 1447(b) until after USCIS made a determination on his naturalization application. Therefore, this Court lacks jurisdiction under § 1447(b). *See Duran-Pichardo*, 695 F.3d at 287 (holding that naturalization applicant who failed to invoke § 1447(b) for a timely hearing on delay of his citizenship determination could not later invoke a due process right to relief.)

### B. Due Process Claims

In the Third Circuit, when a plaintiff has not taken advantage of the remedy available under § 1447(b) while still potentially eligible for naturalization, he is estopped from asserting a violation of his right to due process. *Baptiste*, 776 F. App'x. at 98 (citing *Duran-Pichardo*, 695 F.3d at 286-87 & n.7). Plaintiff did not seek a hearing under § 1447(b) prior to denial of his naturalization application by USCIS. Therefore, this Court lacks jurisdiction over Plaintiff's due process claims.

### C. Administrative Procedures Act, Mandamus Relief and Declaratory Judgment

Plaintiff seeks *nunc pro tunc* review of his naturalization application under the APA or mandamus relief under 28 U.S.C. § 1361, based on allegations that USCIS did not comply with its own regulations in processing his application, particularly the 120-day deadline for granting or denying a naturalization application after the naturalization examination. "The APA allows '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within

16

the meaning of a relevant statute'" to seek judicial review of that action. *Costa v. Chertoff*, No. CIV.A. 07-2467, 2007 WL 4456218, at *3 (E.D. Pa. Dec. 11, 2007) (quoting 5 U.S.C. § 702.) The term "agency action" includes "failure to act." *Id.* (quoting 5 U.S.C. § 551(13)). Under the APA, a reviewing court may "'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). "Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive." *Id.* (collecting cases). "[W]hether the claim is fashioned as a mandamus action, an Administrative Procedures Act claim, or otherwise, *Duran-Pichardo* precludes [district courts] from granting relief in the form of a *nunc pro tunc* review of [an] N-400 application." *Pena Grullon v. Barr*, No. 3:20-CV-0312, 2021 WL 743296, at *7 (M.D. Pa. Feb. 25, 2021). "'Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of the[ ] limitations [established by Congress].'" *Chavarria-Calix v. Att'y Gen. of U.S.*, 510 F. App'x 130, 133 (3d Cir. 2013) (quoting *I.N.S. v. Pangilinan*, 486 U.S. 875, 885

(1988) (alterations in original)).[6]   Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims under the APA and 28 U.S.C. § 1361.[7]

Finally, Plaintiff seeks declaratory judgment to aid in his attack on his removal order in another legal action, and thus potentially open the door for *nunc pro tunc* review of his naturalization application.   The Declaratory Judgment Act does not confer jurisdiction "to gain a litigation advantage" by obtaining an advance ruling on certain aspects of a future suit, rather than to resolve an entire case or controversy. *Stencil v. Johnson*, 605 F. Supp. 3d 1109, 1123 (E.D. Wis. 2022) (quoting *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998)).   Therefore, Plaintiff has failed to establish jurisdiction which would permit *nunc pro tunc* review of his naturalization application.

## IV.   CONCLUSION

For the reasons discussed above, upon de novo review under 8 U.S.C. § 1421(c), Plaintiff failed to establish eligibility for naturalization, and the Court will grant Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim. Additionally, the Court lacks subject matter jurisdiction, and will grant Defendants' motion to dismiss under Rule 12(b)(1), Plaintiff's claims under 8 U.S.C. § 1447(b),

---

[6] Courts retain the power to fashion equitable remedies upon finding constitutional infirmities in statutory provisions.   *Tineo v. Att'y Gen. United States of Am.*, 937 F.3d 200, 216-17 (3d Cir. 2019).   Plaintiff does not allege a constitutional infirmity in the statutes governing naturalization, but rather he alleges the USCIS failed to follow its regulations implementing those statutes.

[7] Because this Court lacks subject matter jurisdiction over Plaintiff's alternative claims for relief, it is unnecessary to resolve whether FBI is a proper party.

18

the Fifth Amendment Due Process Clause; the Administrative Procedures Act, 28 U.S.C. § 1631, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**CHIEF UNITED STATES DISTRICT JUDGE**

Date: June 6, 2024